OPINION
{¶ 1} Juvenile Appellant, S.E., appeals from his adjudication of delinquency for one count of aggravated robbery, with a firearm specification. For the following reasons, the judgment of the trial court will be reversed, and the case will be remanded for further proceedings.
 {¶ 2} The State's evidence was as follows.
 {¶ 3} Early on the morning of August 7, 2007, Mitchell Mustaine left his brother's apartment to walk home. He was carrying bags of clothing that he had *Page 2 
purchased the day before and a two-liter bottle of Coke. A female approached him in the parking lot and started talking to him. Mustaine continued walking. About 100 yards away he noticed a group of people, some of whom he recognized. One of the males told another, Leonard Houston, that Mustaine had money. As Mustaine got closer to the group, two more girls started talking to him. Suddenly, Mustaine heard footsteps behind him and turned to find Houston running up with a gun pointed at him. Houston demanded Mustaine's money.
 {¶ 4} Mustaine threw up his hands, turned, and started backing quickly toward his brother's apartment. However, the group closed in on him, and he was unable to escape. Someone tripped Mustaine, knocking him to the ground, where he was hit and kicked. Mustaine threw his wallet on the ground. The girls grabbed Mustaine's bags and ran to a nearby apartment. As Houston was distracted while rifling through Mustaine's wallet, Mustaine got up and started to run toward his brother's apartment. Houston yelled at him not to run, but Mustaine told Houston to leave him alone and continued to run. Mustaine believed that the rest of the group followed the girls into the apartment. Once at his brother's apartment, Mustaine called the police.
 {¶ 5} Mustaine described his assailants to the responding officers, and he led the officers to the apartment that the group had entered after the robbery. Detective Daugherty went to the apartment where he found several people, including S.E.'s mother, who answered the door and gave the detective permission to search. Inside a bedroom closet the detective found Mustaine's bags of clothing, and he found a two-liter bottle of Coke in the freezer. All of the individuals that S.E.'s mother identified as having been outside at the time of the robbery, including S.E., were transported to the *Page 3 
police station to be interviewed. The detective explained to S.E.'s mother that he was taking S.E. downtown to be interviewed, and she raised no objection.
 {¶ 6} Downtown, each suspect was questioned individually in a standard interview room, while the remaining suspects were overseen by another detective. After Detective Daugherty read S.E. his Miranda rights, S.E. signed the waiver form and agreed to speak with the detective. S.E. told the detective what happened, and then he gave a written statement that was consistent with his oral statement. S.E. admitted that he had hit and kicked Mustaine during the robbery. At trial Mustaine identified S.E. as one of the people who had been involved in the robbery.
 {¶ 7} S.E. testified on his own behalf. He insisted that he had not taken part in the robbery but that he had watched it from his back patio. He also claimed that he had not written his own statement but that his older brother, Anthony Clemons, had done so. He testified both that he signed the statement form in blank after which Clemons wrote the statement and that Clemons wrote the statement after which S.E. then signed the statement without reading it. S.E. also testified that he was fourteen years old and that he had not understood the rights waiver form Detective Daugherty gave him to read. He said he told Detective Daugherty that he was not involved in the robbery.
 {¶ 8} S.E. also called another brother, R.E., as a witness. R.E. testified that he saw the robbery and did not see S.E. take part in it. He also said that he knew that S.E. had been home before and after the robbery, so he assumed that S.E. was not involved. R.E. also acknowledged that he was very protective of his younger brother.
 {¶ 9} The trial court found S.E. responsible for aggravated robbery, including *Page 4 
the firearm specification, and committed him to the Department of Youth Services. S.E. filed a timely notice of appeal.
 I {¶ 10} S.E.'s First Assignment of Error:
 {¶ 11} "The evidence was insufficient to support a conviction for aggravated robbery with firearm specification."
 {¶ 12} In his first assignment of error, S.E. maintains both that his adjudication was not supported by sufficient evidence and that it was against the manifest weight of the evidence. After a review of the evidence we find that the State offered sufficient evidence to warrant submitting the matter to a finder of fact and that the trial court did not clearly lose its way in finding S.E. responsible for aggravated robbery.
 {¶ 13} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Page 5 
 {¶ 14} In contrast, when reviewing a judgment under a manifest weight standard of review "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." Thompkins, supra, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 15} S.E. was found responsible for aggravated robbery in violation of R.C. 2911.01(A)(1), which states that "no person, in attempting or committing a theft offense . . . or in fleeing immediately after the attempt or offense, shall . . . have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possess it, or use it." S.E. insists that the State failed to prove beyond a reasonable doubt that he had committed the offense because the State presented no evidence that S.E. participated in the robbery, had a weapon, or that he was even present at the scene. The record belies these claims.
 {¶ 16} At trial Mustaine identified S.E. as one of his assailants. Although Mustaine did not know S.E.'s name, Mustaine did recognize S.E.'s face as one he had seen around the apartment complex many times before. In both his oral and written statements S.E. admitted that he had hit Mustaine once with his hand and kicked him twice. Furthermore, the evidence showed that Houston pointed a gun at Mustaine *Page 6 
while the girls took Mustaine's bags of clothing and bottle of Coke. This evidence demonstrated beyond a reasonable doubt that S.E. aided and abetted another in committing aggravated robbery.
 {¶ 17} S.E. also claims that the judge lost his way when he believed the victim's testimony over that of S.E. and his brother R.E. At trial S.E. testified that he had not taken part in the robbery but that he had watched it from his patio. R.E. testified that he saw the robbery and did not see S.E. take part in it. R.E., who admitted that he was very protective of his younger brother, also said that he knew that S.E. had been on the patio before and after the robbery, so he assumed that S.E. was not involved. S.E. also maintained that he had not written his own statement, but that his older brother, Anthony Clemons, had done so. However, Detective Daugherty had been interviewing Clemons while S.E. wrote his statement. Also, another detective was with S.E. making sure that the suspects did not communicate with each other. Furthermore, the written statement was consistent both with the oral statement that S.E. gave to Detective Daugherty and with Mustaine's testimony. In the light of the directly conflicting testimony, we do not believe that the trial court lost its way in rejecting S.E.'s evidence.
 {¶ 18} Considering the evidence in a light most favorable to the State, a rational trier of fact could have found that the essential elements of Aggravated Robbery were proven beyond a reasonable doubt. The evidence also refutes S.E.'s claim that the trier of fact lost its way in finding him responsible for that charge. S.E.'s first assignment of error is overruled. *Page 7 
 II {¶ 19} S.E.'s Second Assignment of Error:
 {¶ 20} "Appellant was denied effective representation by competent counsel."
 {¶ 21} In his second assignment of error, S.E. contends that he was denied his right to effective assistance of trial counsel because counsel failed to file a motion to suppress his written statement. In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052.
 {¶ 22} The record reflects that counsel did file a motion to suppress on S.E.'s behalf, although he later chose not to pursue it. Prior to trial, counsel withdrew the motion "subject to examination of the witness, if the statement is offered." Thus, the motion to suppress was still viable at trial and could have been renewed had the evidence warranted. It appears that the trial court anticipated making a ruling on the admissibility of S.E.'s statement from the trial testimony. If so, this practice would have violated Juv. R. 22(D)(3), which requires motions to suppress to be heard before the adjudicatory hearing. At the close of the adjudicatory hearing, defense counsel did not renew the motion to suppress S.E.'s statement, and the trial judge appears to have considered it in adjudicating S.E. delinquent.
 {¶ 23} The thrust of S.E.'s argument is that he did not knowingly and voluntarily confess to his involvement in the aggravated robbery of Mustaine. In support, he points out that he was fourteen years old, that his mother was not present during the questioning, and that he has learning disabilities which caused him to not understand *Page 8 
what was happening. In determining whether a juvenile "appreciated his rights and voluntarily waived them in the absence of an interested adult or parent", the trial court must consider "the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." In re Watson (1989),47 Ohio St.3d 86, 90, 548 N.E.2d 210.
 {¶ 24} Although most of the Watson considerations are not presented on the evidence elicited at the adjudicatory hearing, there was testimony from S.E. that he was fourteen years old and had not understood the discussion with Detective Daugherty about his Miranda rights and the waiver of those rights.
 {¶ 25} In our judgment, counsel was remiss in not renewing the motion to suppress and requiring the trial court to focus on the evidence surrounding the statement. Although the trial court chose to believe the prosecution evidence over that of S.E. as to whether he was involved in the robbery, it was never required to separately evaluate the evidence relating solely to the statement, as is contemplated by Juv. R. 22(D)(3). Had it done so, the outcome of these proceedings might well have been different.
 III {¶ 26} The adjudication of delinquency will be reversed and the cause will be remanded for further proceedings consistent with this opinion. *Page 9 
FAIN, J. and GRADY, J., concur.
Copies mailed to:
Johnna M. Shia
Derrick A. Strahorn
 Hon. Nick Kuntz *Page 1